# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 4561 | DATE | 3/10/2004 |
| CASE TITLE | Global Poly, Inc. Vs. Fred's, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth in the attached Memorandum Opinion and Order, Global Poly's motion to stay or dismiss Fred's counterclaim (doc.# 11) is granted as to all counts; and the motion to strike the affirmative defenses (doc.# 11) is granted without prejudice with respect to the defenses of waiver, laches, estoppal and unclean hands, but denied as to the defense of set-off.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 1 1 2004 | |
| ✓ | Notified counsel by telephone. | | date docketed | 14 |
| | Docketing to mail notices. | | IS | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| mm | courtroom deputy's initials | 2004 MAR 10 PM 4:20 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLOBAL POLY INC., an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | MAR 1 1 2004 |
| | ) | No. 03 C 4561 |
| vs. | ) ) | Magistrate Judge Schenkier |
| FRED'S INC., a Tennessee Corporation, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Global Poly, Inc. ("Global Poly") has filed a motion (a) to dismiss or, in the alternative, stay the defendant, Fred's, Inc. ("Fred's"), counterclaims, and (b) to strike Fred's affirmative defenses (doc. # 11). For the following reasons, the motion to stay the counterclaims is granted; the motion to strike the affirmative defenses is granted in part and denied in part.

### I.

Global Poly has brought a two-count complaint against Fred's in connection with a business relationship that existed between the two parties. In Count I, Global Poly alleges a claim for an account stated, based on three invoices for products provided by Global Poly that Fred's has failed to pay. In Count II, Global Poly alleges a breach of contract as a result of Fred's alleged failure to pay those same three invoices, as well as for an alleged failure to pay for other goods ordered but not yet shipped. This complaint was originally filed in the Circuit Court of Cook County, Illinois and was then removed to the Northern District of Illinois pursuant to 28 U.S.C. § 1441(a), pursuant to this Court's diversity jurisdiction. In its answer and counterclaim, Fred's admits to withholding

payment but claims it did so for justifiable reasons. In addition, Fred's raises five affirmative defenses: setoff, waiver, laches, estoppel and unclean hands.

Fred's also asserts a three-count counterclaim against Global Poly and Tom Wolf, individually, as owner and president of Global Poly. Count I of the counterclaim asserts a claim for breach of contract; Count II asserts a breach of warranty claim; and Count III asserts a claim for non-conforming goods. Fred's counterclaims all are based on three purchase orders issued by Fred's to Strategic Merchandising Solutions ("SMS") in January, February and April 2002 (*see* Motion to Dismiss, Ex. B, Count I ¶¶ 8-10), and SMS's alleged failure to perform on those purchase orders (*Id.*, at Count I, ¶¶ 12-14; Count II, ¶¶ 17-20; Count II, ¶¶ 17-18). Fred's seeks to hold Global Poly and Mr. Wolf liable for alleged conduct of SMS, another company allegedly owned by Wolf, under a "piercing the corporate veil" theory.

SMS (not a party here) has filed a complaint against Fred's that currently is pending in the Circuit Court of Cook County. In that complaint, SMS asserts a claim for account stated based on three invoices that SMS issued to Fred's (different than those from Global Poly that are at issue in this case), but that Fred's allegedly has not paid. In the *SMS* suit, Fred's has asserted a counterclaim against SMS that sets forth the same three contract claims alleged in Fred's counterclaims this case, based on the same allegations Fred's has made in this case, and that seeks the same monetary recovery that Fred's seeking in this case (*see* Motion to Dismiss, Ex. D, Count I, ¶¶ 4-6, 8-10; Count II, ¶¶ 12-15; Count III, ¶¶ 12-13). The only difference between Fred's counterclaims in the two cases is that here Fred's asserts a piercing the corporate veil theory to impose liability on Global Poly and Mr. Wolf along with SMS, but does not do so in the *SMS* case pending in state court.

## II.

Global Poly argues that Fred's counterclaims should be dismissed based on 735 ILCS 5/2-619(a)(3), which states that an Illinois court may dismiss a pending action if "there is any other action pending between the same parties for the same cause." Fred's rejoinder is that Section 2-619(a)(3) does not apply to this case, based on *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272 (7th Cir. 2003). Fred's is right: In *AXA*, the Seventh Circuit held that Section 2-619(a)(3) is a procedural rule for Illinois courts to follow, and that under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts may not dismiss a case arising under federal diversity jurisdiction on that basis. *AXA*, 347 F.3d at 276-78.

However, that determination does not end the matter, because Global Poly and Mr. Wolf argue in the alternative that the counterclaims should be dismissed or stayed under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Under *Colorado River*, "a federal court may stay or dismiss a suit when there is a concurrent state court proceeding and the stay or dismissal would promote 'wise judicial administration.'" *AXA*, 347 F.3d at 278 (quoting *Colorado River*, 424 U.S. at 818). In deciding whether *Colorado River* abstention applies, a court first must consider whether two lawsuits are parallel, which means that "'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Id.* If that is so, then the court must consider ten factors in deciding whether to abstain. *Id.* "[T]he decision whether to defer to the state court is necessarily left to the discretion of the district court in the first instance." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

Employing the analysis required under *Colorado River* and *AXA*, this Court finds that the underlying state court lawsuit and the case before us are parallel and that, on balance, the relevant factors weigh in favor of abstention.

## III.

We address first the question of whether Fred's counterclaims in the state court and in this Court are parallel. Suits are parallel when *substantially* the same parties are litigating *substantially* the same issues. *AXA*, 347 F.3d at 278. "[T]he mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001).

The underlying issues that are being litigated in Fred's counterclaims in both cases are substantially similar. The underlying facts involve purchase orders by Fred's to SMS for peg hooks and shopping carts on January 23, 2002, February 21, 2002, and April 2, 2002. In both cases, Fred's alleges that Fred's paid for these purchases, that the products supplied by SMS were defective, that Fred's notified SMS of the defects, but that SMS did not accept a return of the merchandise or repay Fred's.

The only difference between Fred's counterclaims in the two cases is that Fred's has sued only SMS in the state court action, but in this Court seeks to impose liability for the same conduct on Global Poly and Mr. Wolf on a theory that the corporate veil should be pierced. Central to this theory is that Global Poly and SMS are "merely business conduits or alter egos of Tom Wolf" (Motion to Dismiss, Ex. B. Count I, ¶ 15), which is tantamount to an admission by Fred's that it considers these parties to be "substantially similar." The fact that Global Poly and Mr. Wolf are not joined as parties in the state court case on a piercing the veil theory (although Fred's surely could

4

have done so) does not preclude a finding that the two cases are substantially similar. *See Nimelias*, 250 F.3d at 518. Fred's counterclaims are based on the same set of underlying facts and issues regarding the products sold by SMS. Therefore, this Court finds that the suits are parallel.

## IV.

We now turn to the ten factors that, under *Colorado River*, we must consider when deciding whether to stay or dismiss this case:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained in the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*AXA*, 347 F.3d at 278. When weighing these factors, we are mindful that abstention is only appropriate in "exceptional circumstances," *Colorado River*, 424 U.S. at 813, and that there is "a general presumption against abstention." *AXA*, 347 F.3d at 278.

In this case, the first and second *Colorado River* factors are irrelevant: the underlying claims do not involve property over which the state has assumed jurisdiction, and the state and federal courthouses are within a few blocks of each other. Likewise, the seventh and eighth factors do not affect the decision. Both cases are still in the initial stages, and both courts have jurisdiction over the respective claims (although the *SMS* case cannot be removed, since there does not appear to be diversity, Fred's could have brought its piercing the corporate veil claim against Global Poly and Mr. Wolf in that state court action).

A number of the remaining factors weigh in favor of abstention. The third factor weighs heavily in favor of abstention: we see no good reason for two courts to adjudicate the same underlying contract claims. Fred's argues that a favorable resolution in state court would not dispose of the claims before this Court because SMS may become insolvent, and Fred's would be forced to pursue Mr. Wolf separately under the piercing the corporate veil doctrine. However, Fred's has not suggested a reason why it cannot include that theory in the claim in state court and therefore avoid a separate trial in this Court on that issue. The counterclaim against Global Poly and Mr. Wolf will not be prejudiced by this Court abstaining, and if Fred's is able to recover damages from SMS, then the counterclaim in this case will be unnecessary.

The fourth factor weighs slightly in favor of abstention, at best: Fred's filed its counterclaim in the *SMS* case 10 days before filing its counterclaim in this case. The fifth factor weighs in favor of abstention, since state law governs all of the separate counts of the counterclaim. The sixth factor also weighs in favor of abstention. The state court proceeding will allow Fred's to enforce any rights against SMS that may exist under the contract, or to collect damages if they are awarded. Again, Fred's contention that SMS may become insolvent, even if true, does not explain why the piercing the corporate veil doctrine could not also be asserted against Global Poly and Mr. Wolf in state court – whether as an affirmative claim in that lawsuit, or in supplementing proceedings if Fred's obtains a judgment against SMS but has difficulty collecting it. Finally, the ninth factor weighs in favor of abstention. The *SMS* case cannot be removed, and thus the inefficiency of duplicative proceedings cannot be avoided through that device.

The tenth factor weighs against abstention, because there is no indication that the federal claim is vexatious. However, that consideration does not carry the day for Fred's. We are mindful

that application of *Colorado River* requires is more than simply tallying up the ten factors, and basing a decision of whether more of them support or undermine abstention. But here, the weight of the factors favor abstention, which would avoid piecemeal and duplicative litigation without depriving Fred's of a convenient and fully adequate forum to address the underlying contract claims (or the corporate veil claims, if Fred's chooses to pursue them in *SMS*). After carefully weighing the factors and considering the presumption against abstention, the Court finds that *Colorado River* factors weigh in favor of abstention, which would promote "'[w]ise judicial administration,'" *Colorado River*, 424 U.S. at 818, (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)) by avoiding duplicative litigation.

The Seventh Circuit has consistently held that "a stay, not a dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine." *Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 409 (7th Cir. 1996). *See also Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995); *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1561-62 (7th Cir. 1989); *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1308-09 (7th Cir. 1988). The rationale for entry of a stay, rather than dismissal without prejudice, was articulated by the Seventh Circuit in the case of *Evans Transp. v. Scullin Steel Co.*, 693 F.2d 715, 717-18 (7th Cir. 1982). This Circuit wishes to preserve a federal forum for the litigant who, but for the parallel state court proceeding, would be entitled to have its claims resolved here in the event that the state suit "wash[es] out" – even if the right to be in federal court is premised on diversity rather than federal subject matter jurisdiction. Although the case before us presents a slight wrinkle – here, we are asked to stay a counterclaim rather than an entire case – we believe the rationale of *Evans* controls disposition of this motion: "[e]ven when abstention is justified, the

7

federal suit should not be dismissed, . . . if should be stayed." *Evans*, 693 F.2d at 717. Accordingly, the Court grants the motion to stay the counterclaims, but denies the motion to dismiss them.

V.

A motion to strike under Federal Rule of Civil Procedure 12(f) is the primary procedure for objecting to an insufficient defense. *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991). Motions to strike are generally disfavored, and "may be granted only if the defense is patently defective and could not succeed under any set of circumstances." *Carpenter v. Ford Motor Co.*, 761 F. Supp. 62, 65 (N.D. Ill. 1991). An affirmative defense must notify the plaintiff of the nature of the defense. *Flasza v. TNT Holland Motor Exp., Inc.*, 155 F.R.D. 612, 613 (N.D. Ill. 1994). If the affirmative defense is comprised of "no more than 'bare bones conclusory allegations,'" it should be stricken. *Id* at 614. A three-part test for examining an affirmative defense is outlined in *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 737 (N.D. Ill. 1982).

> (1) Initially, the court will determine whether the matter is appropriately pleaded as an affirmative defense. Only matters that deserve a clear "no" answer will be stricken to make the pleadings more concise.
>
> (2) If a matter may remain as an affirmative defense the Court will determine if it is adequately pleaded under the requirements of Rules 8 and 9. Any defense inadequately pleaded will be dismissed *without* prejudice to enable defendants to correct that technical deficiency.
>
> (3) Any matter permitted to stand as an affirmative defense will be tested under a standard identical to Rule 12(b)(6). If it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the Complaint, the matter will be stricken as legally insufficient.

*Id. Cf. Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294-95 (7th Cir. 1989).

Using this test, this Court finds that a set of facts exists for the defense of setoff that would defeat the complaint, so it will not be stricken. However, the affirmative defenses of waiver, laches, estoppel, and unclean hands are not adequately pleaded, and will be dismissed.

### A.

"A 'setoff' is a 'counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim.'" *Minalga v. Fid. Invs. Institutional Operations Co., Inc.*, No. 01 C 4173, 2002 WL 31527251, at *2 (N.D. Ill. Nov. 14, 2002) (quoting BLACK'S LAW DICT. 1376 (7th ed. 1999). A defense of setoff should not be stricken if the counterclaim could serve as a setoff against a judgment in favor of the plaintiff. *See Brizendine v. U.S. Gypsum Co.*, No. 91 C 6794, 1992 WL 159449, at *2 (N.D. Ill. June 25, 1992). Fred's incorporated the allegations in the counterclaim into this defense by reference and alleged that SMS is liable for a setoff equal to the amount Fred's paid for defective goods. Fred's also alleges that Global Poly and SMS are so intertwined that they should be treated as the same party. The allegations put Global Poly on notice of the factual circumstances that allegedly give rise to a setoff. And, viewing the allegations in the light most favorable to Fred's, the allegations (if proven) could entitle Fred's to a setoff.

### B.

Waiver, laches, and estoppel all are affirmative defenses enumerated under Rule 8(c). Waiver involves a "voluntary, intentional relinquishment of a known right." *Ocean Atlantic Woodward Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2003 WL 1720073, at *8 (N.D. Ill. Mar. 31, 2003) (quoting *Int'l Ins. Co. v. Peabody Int'l Corp.*, No. 87 C 464, 1991 WL 23630, at *3 (N.D. Ill. Jan. 23, 1991)). Laches "bars a party's rights when the party has unreasonably delayed their assertion so as to cause prejudice to the opposing party." *Hawxhurst v. Pettibone Corp.*, 40

F.3d 175, 181 (7th Cir. 1994). To plead estoppel, a defendant must assert: (1) that a party acted; (2) another party reasonably relied on those acts; and (3) the latter party thereby changed its position for the worse. *See, e.g., Bobbitt*, 532 F. Supp. at 738. Fred's answer contains only the conclusory statement that Global Poly's case is barred under the doctrines of waiver, laches and estoppel (Def.'s Answer at 4). The pleading fails to put Fred's even on notice of the conduct allegedly constituting waiver, laches or estoppel. Therefore, those three affirmative defenses will be stricken.

### C.

Unclean hands is properly raised as an affirmative defense. *See Ocean Atlantic*, 2003 WL 1720073, at *5; *Tome Engenharia E Transporrtes, Ltd. v. Malki*, No. 94 C 7427, 1996 WL 172286, at *11 (N.D. Ill. Apr. 11, 1996). To assert a defense of unclean hands, Fred's must plead that Global Poly acted in a way that amounts to fraud, misconduct or bad faith. *Ocean Atlantic*, 2003 WL 1720073, at *5. If Fred's suggests that fraud occurred, Rule 9(b) requires that any allegations of fraud include the particular circumstances such as the time, place, and contents of the representation or omission. *Carpenter*, 761 F. Supp. at 66. Fred's pleading contains only the conclusory statement that Global Poly's claim is barred by the doctrine of unclean hands (Def.'s Answer at 4). This allegation fails to provide the basic notice required by Rule 8(a); therefore, this affirmative defense will be stricken.

## CONCLUSION

For the reasons set forth above, Global Poly's motion to stay or dismiss Fred's counterclaim (doc. # 11) is granted as to all counts; and the motion to strike the affirmative defenses (doc. # 11) is granted without prejudice with respect to the defenses of waiver, laches, estoppel and unclean hands, but denied as to the defense of set-off.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: March 10, 2004**