# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4561 | **DATE** | 10/28/2004 |
| **CASE TITLE** | Global Poly, Inc. vs. Fred's, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion for summary judgment on Count II of the complaint (doc. # 19) is denied. The matter is set for a status conference on November 23, 2004, at 9:00 a.m. to discuss scheduling for trial. The parties are directed to seriously explore settlement prior to that status date.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 29 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 32 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mm | courtroom deputy's initials | 2004 OCT 29 AM 8:25 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GLOBAL POLY INC., an Illinois Corporation, ) ) ) Plaintiff, ) ) vs. ) ) FRED'S INC., a Tennessee ) Corporation, ) ) Defendant. ) | No. 03 C 4561<br><br>Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER

This is the Court's second opinion in this diversity suit involving a dispute between the plaintiff, Global Poly, Inc. ("Global Poly") and the defendant, Fred's Inc. ("Fred's), concerning an alleged failure to pay for purchase orders ("PO's") entered into between the two parties. In the Court's previous opinion, Global Poly's motion to stay Fred's counterclaims was granted, and the motion to strike Fred's affirmative defenses was granted in part and denied in part. After the Court's earlier opinion, the parties settled Count I of the complaint. *See Global Poly, Inc. v. Fred's, Inc.*, No. 03 C 4561, 2004 WL 532844 (N.D. Ill. Mar. 11, 2004). Global Poly has now filed a motion for summary judgment on Count II of its complaint (doc. # 19), which alleges breach of contract for Fred's alleged failure to pay for certain goods it ordered. For the following reasons, the motion for summary judgment is denied.

**DOCKETED**
OCT 2 9 2004

## I.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 91 L.Ed. 2d 202, 106 S.Ct. 2505 (1986). Accordingly, disputes of fact in the record should be viewed in favor of the opponent to a motion for summary judgment, and reasonable inferences from the evidence drawn in the opponent's favor. *See Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004). However, conclusory statements by the nonmoving party which are unsupported by specific facts will not be enough to overcome a motion for summary judgment. *First Commodity Traders v. Heinold Commodities*, 766 F.2d 1007, 1011 (7th Cir. 1985).

Global Poly has complied with the Local Rule 56.1(a), which requires a party moving for summary judgment to submit a statement of material facts as to which the party contends there is no genuine issue in dispute. This statement of undisputed, material facts included "references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth." UNITED STATES DIST. COURT, N. DIST. OF ILL. LR 56.1. All properly supported material facts set forth in a motion for summary judgment are deemed admitted unless properly controverted by the opposing party. *See Id.; see also Corder v. Lucent Techs., Inc.*, 162 F.3d 924, 927 (7th Cir. 1998). Therefore, Fred's could not simply rely on its denials in the pleadings to show the existence of a genuine issue of material fact. *See Shermer v. Illinois Dep't of Transp.*, 171 F.3d 475, 477 (7th Cir.

2

1999). Rather, Fred's must "come forward with appropriate evidence demonstrating that there [was] a pending dispute of material fact." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

## II.

Set forth below are the material, undisputed facts, drawn from the parties' Rule 56.1 statements and related exhibits. As will be clear upon review, while many facts are not in dispute, the inferences to be drawn from these facts are genuinely disputed, and preclude summary judgment.

In early 2001, Fred's and Global Poly entered into a business relationship whereby Fred's would issue purchase orders to Global Poly to make plastic shopping bags, bearing Fred's logo, for future delivery ((Global Poly's 56.1(a)(3) Statement in Support of Its Motion for Summary Judgment, ¶ 5). On November 17, 2001, Jerry Doler, then the Purchasing Manager of Fred's, sent a letter to Tom Wolf, President of Global Poly, stating that "all of Fred's PO's [purchase orders] to [Global Poly] are non-cancelable and non-changeable" (Global Poly's 56.1(a)(3) Statement ¶ 6 and Ex. C). Further, Mr. Doler stated that the letter was a "standing agreement for all PO's current and future," (*Id.*, Ex. C).

On June 20, 2002, Fred's issued eleven purchase orders to Global Poly for the manufacture and delivery of shopping bags on various dates (Global Poly's 56.1(a)(3) Statement, ¶ 7).

On July 15, 2002, Byron LeJeune, Vice President of Corporate Services for Fred's, sent an email to Mr. Wolf informing him that Mr. Doler was "no longer with" the company and that Fred's was in the process of "reviewing accounts." (*see* Fred's Rule 56.1(b)(3) Statement, ¶ 12, Ex. C). Mr. LeJeune sent another email to Mr. Wolf on August 27, 2002, stating that Fred's had placed PO's with several vendors for supplies in "quantities that exceed normal business practice," (*Id.*). In that

3

email, Mr. LeJeune asked Global Poly to work with Fred's and, "in some cases, cancel PO's if necessary" (*Id.*).

Mr. Wolf responded on the same day stating that "at no time has anyone at Fred's mentioned any cancellation of orders between [the] companies," or indicated that Fred's would not pick up orders already shipped (Fred's Rule 56.1(b)(3) Statement, Ex. C). Mr. Wolf wrote that it expected Fred's to "honor open orders and honor orders that were exclusively manufactured for them and awaiting pick-up on the West Coast" (*Id.*). Mr. LeJeune replied that : "[i]n our first meeting I asked you to look at canceling orders that had not yet been manufactured and you agreed to look at those orders." (*Id.*). Mr. LeJeune added that he "will do everything [he] can to work with [Global Poly] to receive the goods ordered by Jerry Doler . . . on behalf of Fred's," but "will not receive non-critical supplies, that I do not need, . . ." (*Id.*).

On December 10, 2002, after the foregoing exchange of emails between Messrs. LeJeune and Wolf, Global Poly set up orders with third party for supplies to fill certain of the purchase orders placed by Fred's in June 2002. These supply orders referenced six of the purchase order numbers issued by Fred's to Global Poly in June 2002 (*see* Fred's Rule 56.1(b)(3) Statement, Ex. D).

On March 18, 2003, April 25, 2003, and March 9, 2003, Global Poly issued three invoices for bags delivered pursuant to three of the June 2002 purchase orders (P.O. Nos. 832812, 832821, and 832839); the bags were apparently shipped around the same time the invoices issued (*see* Global Poly's 56.1(a)(3) Statement, ¶ 8). Fred's acknowledged receipt of the bags pursuant to these invoices, but initially refused to pay for them (*Id.*, ¶ 9). That failure to pay was the subject of Count I of the complaint, which now has been settled (*Id.*, ¶¶ 10-11).

4

The goods ordered by Fred's in the eight remaining purchase orders of June 2002 (P.O. Nos. 832847, 832871, 832880, 832936, 832961, 832995, 833002, and 833029) have not been manufactured or delivered, as Fred's has not provided shipping dates for those goods or assurance it would pay for them if delivered (Global Poly's Rule 56.1(a)(3) Statement, ¶ 12). Those remaining purchase orders are the subject of Count II of the complaint, and of the pending summary judgment motion.

### III.

Global Poly contends that the undisputed facts demonstrate that Fred's (through Mr. Doler) made a "non-cancelable and non-changeable" order for plastic shopping bags in June 2002, and that Fred's now is responsible for $93,558.08 lost profits resulting from Fred's failure to follow through on those purchase orders (Global Poly's Rule 56.1(a)(3) Statement, ¶ 14). Fred's contends that there is a genuine fact dispute (1) as to Mr. Doler's authority to bind Fred's to such an order, and if he lacked that authority, (2) as to whether Fred's nonetheless subsequently ratified that June 2002 purchase order. We consider each of these contentions in turn.

### A.

A principal is liable for those acts of its agents which the agent has actual or apparent authority to perform. *Bank of Waukegan v. Epilepsy Foundation of Amer.*, 516 N.E.2d 1337, 1340 (Ill. App. 1987). Under Illinois law, the existence of an agency relationship and its extent are questions of fact. *Kinesoft Development Corp. v. Softbank Holdings Inc.*, 139 F.Supp. 2d 869, 899 (N.D. Ill. 2001) (citing *Brunswick Leasing Corp. v. Wisconsin Central, Ltd.*, 136 F.3d 521, 526 (7th Cir. 1998)). The burden of proving agency and the scope of authority is on the person seeking to charge the alleged principal – here, Global Poly. *Yugoslav-American Cultural Ctr., Inc. v. Parkway*

5

*Bank & Trust Co.*, 682 N.E.2d 401, 406 (Ill. App. 1997). Fred's contends that Mr. Doler, in his capacity as Purchasing Manager, did not have authority to make all purchase orders with Global Poly "non-changeable" and "non-cancellable." Global Poly counters that Mr. Doler had authority to enter into the non-cancellable order agreement simply because of his position with the company. Global Poly also claims that Fred's has failed to offer evidence to support its challenge Mr. Doler's authority – overlooking that affidavits of Mr. LeJeune and John McMorrough, Mr. Doler's supervisor, were presented by Fred's to show Mr. Doler's lack of authority.

We first address Global Poly's argument that Mr. Doler had actual authority to set the terms for Fred's orders. An agent has actual authority to act on a principal's behalf when the principal's words or actions (*i.e.*, the principal's "manifestation" of intent) would lead a reasonable person in the agent's position to believe that he or she was so authorized. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000) (interpreting Illinois law and the Restatement (Second) of Agency). Actual authority may either be express or implied. Restatement (Second) of Agency § 7 cmt. c. An agent has express actual authority when the principal explicitly grants the agent the authority to perform a particular act. *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004) (citing *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 759 N.E.2d 174, 181 (Ill. App. Ct. 2001)). Global Poly has not offered undisputed facts to show express authority here, as no evidence was presented to show that Fred's explicitly granted Mr. Doler the authority to enter into "non-cancelable and non-changeable" orders.

Nor has Global Poly offered undisputed facts to show that Mr. Doler possessed implied actual authority. Implied authority is that authority which is inherent in an agent's position and is, simply, actual authority proved through circumstantial evidence. *Moriarty v. Glueckert Funeral*

*Home, Ltd.*, 155 F.3d 859, 866 (7th Cir. 1998); *see also Opp v. Wheaton Van Lines, Inc.*, 231 F.3d at 1064 ("implied authority is actual authority that is implied by facts and circumstances and it may be proved by circumstantial evidence"). An agent has implied authority for the performance or transaction of anything reasonably necessary to effect execution of his express authority. *Opp*, 231 F.3d at 1064 (citing *Advance Mortg. Corp. v. Concordia Mut. Life Ass'n*, 481 N.E.2d 1025, 1029, (Ill. App. Ct. 1985).

Global Poly argues that if Mr. Doler was the Purchasing Manager, then he necessarily must have had the implied authority to set whatever terms of purchase orders he wished – including whether an order could be cancelled or changed. That may be a permissible inference; but, it is not the *only* permissible inference. A jury might reasonably conclude, upon hearing all the evidence, that Mr. Doler had authority to make purchases, but that there were limitations on that authority. The title of "purchasing manager" may not automatically vest in a person sole authority to commit a company to any and all possible terms of purchase. For example, a purchasing manager might have limitations on the dollar value of purchases he or she can make. Or, a purchasing manager may have limits on his or her authority to commit a company to purchases, without having some wiggle room for cancelling or changing the orders – and, indeed, that is in substance what Fred's affidavits on summary judgment say. Where there are conflicts in the evidence, we are not at liberty on summary judgment to decide which party's version a jury would be more likely to accept.

In the alternative, Global Poly argues that Mr. Doler had apparent authority to bind Fred's to the terms of the November 17, 2001 letter stating that all orders would be "non-cancelable and non-changeable." Under Illinois law, apparent authority exists if: (1) the principal consents to or knowingly acquiesces in the agent's conduct; (2) the third party has a reasonable belief that the agent

7

possesses authority to act on the principal's behalf; and (3) the third party relied to his detriment on the agent's apparent authority. *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 859 (7th Cir. 2001) (citing *Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 807, (Ill. App. Ct. 1998)). Specifically, the principal must do something to lead the third party to believe that the agent is authorized to act on its behalf. *Yugoslav-American Cultural Ctr., Inc.*, 682 N.E.2d at 406. The agent cannot unilaterally create an apparent agency through his own words or conduct. *See id.* However, apparent agency may arise from silence of the principal if the principal knowingly allows another to act for them as agent. *Bethany Pharmacal Co.*, 241 F.3d at 860.

In support of its apparent authority argument, Global Poly points only to Mr. Doler's job title with Fred's, and the contents of Mr. Doler's November 17, 2001 letter. However, Global Poly has provided nothing to show Fred's knew of Mr. Doler's commitment that orders would be non-cancellable and non-changeable, and acquiesced to that commitment. While a jury might conclude that Fred's knew of that commitment (despite its assertion to the contrary), a jury also might infer lack of knowledge from evidence such as Mr. LeJeune's emails to Mr. Wolf in the summer of 2002, after Mr. Doler was terminated and Fred's told Global Poly it was then undertaking a review of accounts. Resolution of these questions of fact must be left to a jury.

## B.

Global Poly argues that even if Mr. Doler lacked authority to bind Fred's to non-cancellable and non-changeable orders, Fred's ratified that agreement of the June 2002 purchase order by accepting delivery of the first three shipments under the purchase order in the Spring of 2003 – long after Mr. LeJeune was aware of Mr. Doler's actions. Ratification takes place with the principal, with knowledge of the material facts regarding an unauthorized transaction, takes a position inconsistent

8

with non-affirmation of the transaction or retains the benefit of the transaction. *Stathis*, 692 N.E. 2d at 808. The rationale behind the doctrine of ratification is that when a party obtains a benefit through the actions of someone acting in the party's behalf, ratification will be found "as long as the principal has full knowledge of the facts and has the choice of either accepting or rejecting the benefits of the benefits of the transaction." *Yugoslav-American Cultural Ctr.*, 682 N.E.2d at 408 (quoting *Swader v. Golden Rule Ins. Co.*, 561 N.E.2d 99, 106 (Ill. App. Ct. 1990)).

Here, there is a genuine dispute over whether Fred's conduct in accepting the first three shipments was inconsistent with its position that Mr. Doler lacked authority to enter into the June 2002 purchase order that provided the order could not be changed or cancelled. Mr. LeJeune's August 27, 2002 email stated that Fred's may require Global Poly to "in *some* cases, cancel P.O.'s if necessary" (*See* Fred's Rule 56.1(b)(3) Statement ¶ 12, Ex. C) (emphasis added). A jury reasonably could conclude that Fred's later conduct in accepting three shipments, but not eight others, was consistent with its position as expressed in Mr. LeJeune's email, and did not ratify all eleven purchase orders made by Mr. Doler in June 2002. Generally, the question of ratification turns on the principal's intent to affirm. *Progress Printing Corp. v. Jane Byrne Political Comm.*, 601 N.E.2d 1055, 1067 (Ill. App. 1992). Whether Fred's acceptance of the first three shipments reflected an intent to accept *all* shipments under the June 2002 purchase orders is a question of fact for the jury.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment on Count II of the complaint (doc. # 19) is denied. The matter is set for a status conference on November 23, 2004, at 9:00 a.m. to discuss scheduling for trial. The parties are directed to seriously explore settlement prior to that status date.

ENTER:

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: October 28, 2004**